Bunn v. Lindsay.

BUNN, *Appellant*, v. LINDSAY *et al.*

1.   **Judgment Lien:** HOMESTEAD.   The lien of a judgment will not be displaced by the subsequent occupation of the premises as a homestead.

2.   **Homestead, Sale not Void, for Failure of Sheriff to set it out :** TITLE OF PURCHASER.   Where the sheriff fails to set out to the judgment debtor his homestead, the sale is not for that reason void. The title will pass to the purchaser subject to the homestead.

3.   **Payment of Debt by Third Person :** SATISFACTION : SUBRO-GATION.   The debt of a creditor, which is paid with the money of a third person without any agreement that the security shall be assigned or kept on foot for the benefit of such third person, is absolutely extinguished ; the doctrine of subrogation applying when the person claiming its benefit has been compelled to pay the debt of a third person in order to protect his own rights or to save his own property.

Bunn v. Lindsay.

*Appeal from DeKalb Circuit Court.* — Hon. Joseph P. Grubb, Judge.

Affirmed.

*Ramey & Brown* and *J. F. Harwood* for appellant.

(1) Appellant having paid off the mortgage to the St. Joseph Building Company at the request of respondent Lindsay, and pursuant to an express understanding with Lindsay that he should be secured by a first lien upon the land, which should take the place of, and be equal in extent to, the lien so paid off, and having failed to secure such lien on account of mere oversight or mistake in not having discovered the Paramore judgment, he will be relieved in equity by being subrogated, to the extent of such payment, to the original lien of the building company. *Building Ass'n v. Thompson*, 32 N. J. Eq. 133 and cases cited ; *Payne v. Hathaway*, 3 Vt. 212 ; Dixon on Subrogation, 165 ; *Bright v. Boyd*, 1 Story, 478 ; s. c., 2 Story, 607 ; *Valle's Heirs v. Fleming's Heirs*, 29 Mo. 152. (2) Under the circumstances of this case the deed of trust executed by Lindsay to appellant will be held, in equity, to relate back to its date which is concurrent with the first act in the negotiation which led to its complete execution by delivery. *Jackson v. Ramsey*, 15 Am. Dec. 242, and note. (3) The respondent Lindsay was, as against the judgment and execution of Paramore, entitled to a homestead in the land in controversy, which passed to appellant by the deed of trust. The sheriff having failed to set off such homestead the execution sale is void as to appellant and should be set aside. *Vogler v. Montgomery*, 54 Mo. 577 ; *Beckman v. Meyer*, 75 Mo. 333 ; *State ex rel. v. Mason*, 88 Mo. 222 ; *McClary v. Bixby*, 35 Vt. 254 ; Herman on Ex., sec. 107, p. 123, and cases cited. (4) The defendant Leisenrig is, under the evidence, chargeable with notice of

all of appellant's rights. *Leeper v. Bates*, 85 Mo. 224; *Leavitt v. Laforce*, 71 Mo. 353; *Mabary v. McClurg*, 74 Mo. 575; *Speck v. Riggin*, 40 Mo. 405; *Bank v. Delano*, 48 N. Y. 326, and cases cited.

*S. H. Corn* and *T. E. Turney* for respondents.

(1) The finding of the court below upon the facts, being in favor of respondents and supported by the testimony, will be respected by this court; and this court will not reverse the judgment unless the court below erred in matter of law. *Bank v. Murry*, 88 Mo. 191; *Anderson v. Griffith*, 86 Mo. 549. (2) The facts upon which appellant predicates his first point are not supported by the testimony. Lindsay never requested appellant to pay off the mortgage of the St. Joseph Building Company, nor was there any understanding that he should do so, and appellant, in fact, never did pay it. The appellant is not entitled to be subrogated to the rights of the St. Joseph Building Company prior to the extinction of its lien, under the facts in this case. Sheldon on Subrogation, secs. 3, 240-1-2-3, p. 278, *et seq;* *Wade v. Baldwin*, 40 Mo. 486; *Wooldridge v. Scott*, 69 Mo. 669; *Sharp v. Collins*, 74 Mo. 266; *Price v. Courtney*, 87 Mo. 395; *Stearns v. Godfrey*, 16 Me. 158; *Woollen v. Hillen*, 9 Gill [Md.] 185; *Small v. Stagg*, 95 Ill. 39; *Sanford v. McLean*, 3 Paige, 117; *Downer v. Miller*, 15 Wis. 612; *Barber v. Lyon*, 15 Ia. 37; *Gadsden v. Brown*, Speers' Eq. [S. C.] 37; *Webster's Appeal*, 86 Pa. St. 409; *Shinn v. Budd*, 14 N. J. Eq. 234; *Woods v. Gibson*, 17 Ill. 218; *Kitchell v. Mudgett*, 37 Mich. 82; *Guy v. DuUprey*, 16 Cal. 195; *Commonwealth v. Canal Co.*; 32 Md. 501. (3) Appellant's grievances are the result of his own negligence. Paramore was a creditor of Lindsay of equal merit with Bunn. A court of equity will not deprive the former of his legal rights, in order to relieve the latter of the result of his own negligence. *Conner v. Welch*, 51 Wis. 431; 1 Story

Eq. Jur. [6 Ed.] sec. 146, and note; *Brown v. Fagan,* 71 Mo. 563; Sheldon on Subrogation, sec. 43, p. 48. (4) The facts of this case furnish no ground for the application of the doctrine of "relation." It is only when a party has become entitled to the fruits of a deed at a time anterior to its execution that the deed, when executed, will relate back to protect the title of the grantee to the time when his rights to the thing granted accrued. Appellant was not entitled to his deed of trust until he had parted with his money; for that reason its execution was delayed until January 23, 1875. The doctrine of relation operates only as to parties and privies to the deed, and never to the prejudice of the rights of others. *Alexander v. Merry,* 9 Mo. 528; *Crowley v. Wallace,* 12 Mo. 143; *Hart v. Rector,* 13 Mo. 497; *Strain v. Murphy,* 49 Mo. 340; *Powers v. Hermert,* 51 Mo. 136; *Hearn v. Keath,* 63 Mo. 84; Wash. on Real Prop. [3 Ed.] p. 276, chap. 4, sec. 2; 15 Am. Dec., note 3, p. 246. (5) If Lindsay had any homestead rights in the land at the time of the sale under the execution, appellant cannot assert them in this suit. *Gunnison v. Twitchel,* 38 N. H. 62, 68; *Bennett v. Cutler,* 44 N. H. 71; *McElroy v. Bixbie,* 36 Vt. 254; *Judge v. Simonds,* 46 N. H. 363–8; *Foss v. Strachn,* 42 N. H. 42; Thompson on Homesteads, sec. 452, and cases there cited. (6) The sale under the execution was not void. *Crisp v. Crisp,* 86 Mo. 630; *Blandy v. Asher,* 72 Mo. 27, 36. (7) Removing out of the state pending his motion to set aside the sale was an abandonment by Lindsay of his claim of a homestead in the land; and as the sale was not void, no assignment of a homestead in the land could have been made after abandonment in that or any other proceeding. Thompson on Homesteads, sec. 263, and cas. there cit. (8) Lindsay had no homestead in the land; his occupancy did not begin until after the lien of the judgment attached. *Finnegan v. Prindeville,* 83 Mo. 517; Thompson on Homesteads, secs. 241–4. (9) Leisenrig had no notice of

appellant's claims except what the record imparted at the time of his purchase. The record of his deed of trust imparted notice that its recitals were true only from and after the date of the acknowledgment. 3 Wash. on Real Prop. [3 Ed.] chap. 4, sec. 2; *Blanchard v. Tyler*, 12 Mich. 339; *Fountain v. Bank*, 57 Mo. 552; *Norfleet v. Bissell*, 64 Mo. 176.

BRACE, J.—On the fifth day of September, 1873, John M. Lindsay, being the owner in fee of the undivided half of section 8, township 59, range 32, in DeKalb county, executed his note of that date to the St. Joseph Building Company for the sum of six thousand dollars, and on the same day, with his wife, executed a deed of trust on said undivided half of said section to secure the payment of said note, which was recorded on the ninth day of September, 1873, in said county. On the first day of December, 1873, the said Lindsay executed his note, payable to the order of Joel T. Smith, six months after date, for the sum of seventeen hundred and fifty dollars. About the first of July, 1874, Lindsay applied to one House, at Cameron, Missouri, who was the agent of plaintiff, a money-lender, then resident in Bloomington, Illinois, for a loan of twenty-five hundred dollars to pay off said deed of trust. House, at the instance of plaintiff, examined the records of DeKalb county, made an abstract of Lindsay's title to said real estate, showing that there were no incumbrances on said property except said deed of trust, and forwarded it to the plaintiff, informing him that the money to be borrowed was to be used in paying off the debt, secured by said deed of trust. Thereupon plaintiff prepared three bonds or notes and a deed of trust on said real estate to be executed by said Lindsay, each bearing date the first of July, 1874, two of the notes for one thousand dollars each and one for five hundred dollars, payable to plaintiff on the first of July, 1879, at

Bunn v. Lindsay.

the Mercantile National Bank at Hartford, with interest from date at the rate of ten per cent. per annum, payable semi-anually on the first days of January and July, the interest to bear the same rate of interest as the principal after due, as evidenced by ten interest coupons attached to each of said notes or bonds, and all secured by said deed of trust to one Powell, with power of sale in case of any default in payment of principal or interest, and forwarded said notes and deed of trust to his said agent to "complete the transaction," who thereupon entered into negotiations with the building company to pay off their claim.

On the twelfth of December, 1874, Gideon C. Paramore recovered judgment in the circuit court of Clinton county against Lindsay on the Smith note for nineteen hundred and seventy-two dollars, and on the fifteenth of December, 1874, filed a transcript of said judgment in the office of the clerk of the circuit court of DeKalb county, which was thereupon duly docketed and recorded by said clerk. On the twenty-third of January, 1875, Lindsay signed the bonds, and he and his wife executed and acknowledged the deed of trust prepared by plaintiff, and the same were delivered to House, his agent, who thereupon placed plaintiff's draft on New York for twenty-five hundred dollars in the Cameron Deposit Bank, to be delivered to the St. Joseph Building Company upon the surrender by them of Lindsay's note and a release of their trust deed.

On the twenty-fifth of January, 1875, the building company in Buchanan county executed and acknowledged a release and satisfaction of their trust deed to Lindsay in consideration of the sum of twenty-five hundred and ten dollars paid by him, and on the twenty-eighth of January, 1878, this deed of release and Lindsay's deed of trust to Powell to secure plaintiff's bonds, were at the same time filed for record in the office of the recorder of DeKalb county. In March, 1876,

Lindsay, who before that time had been residing on a forty-acre tract of land adjoining said section 8, moved into a house on said section which he had previously built, and continued to reside there from that time with his family until 1880, when he removed from the premises and left the state. On the sixth of December, 1877, Paramore caused an execution to be issued on his judgment, which, on the tenth of December, 1877, was levied on all his interest in said real estate, and by virtue thereof the same was, on the eighth of October, 1878, sold, and he became the purchaser thereof at the price of two hundred and five dollars and received the sheriff's deed therefor. Notice was given at the sale that Lindsay claimed a homestead in the land, and that plaintiff claimed a lien upon the land superior to Paramore's judgment to the amount of twenty-five hundred dollars, which he had paid to extinguish the St. Joseph Building Company's lien for six thousand dollars. The testimony tended to show that at the time of the sale the land was worth ten dollars per acre.

At the October term, 1878, of the Clinton circuit court, to which the execution was returned, Lindsay filed a motion to set aside the sale for the reason that a homestead in said land had not been set off to him by the sheriff prior thereto, which motion was by him withdrawn at the October term of said court, 1879. On the tenth of September, 1879, Paramore, by general warranty deed, conveyed said land to the defendant, James B. Leisenrig for the expressed consideration of twenty-five hundred dollars.

At the April term, 1884, of the DeKalb circuit court plaintiff instituted this suit, in his petition charging that defendant Leisenrig paid no consideration for the land and received his deed therefor with notice of the foregoing facts, and that the sale to Paramore was void for the reason that the sheriff failed to set off Lindsay's homestead, and praying that he be subrogated to all the

rights and remedies the St. Joseph Building Company had by virtue of their deed of trust against said land to the extent of twenty-five hundred dollars, with interest thereon at the rate of ten per cent. per annum from the date of the payment of that sum to the building company, and that the same be declared a lien upon said land against defendants; that their equity of redemption be foreclosed and the land sold to satisfy such lien. Defendants Lindsay and Paramore were not served, and did not answer. Defendant Leisenrig answered, admitting the allegations of the petition in regard to the ownership of the land by Lindsay, the recovery of the judgment by Paramore, the filing of the transcript thereof, the issue and levy of the execution and sale and purchase by Paramore, and averred that he purchased said land of Paramore for the sum of twenty-five hundred dollars, who conveyed the same to him by general warranty deed and denied all the other allegations of the petition. The court found the issues for the defendant and dismissed the bill.

On the fifteenth of December, 1874, Paramore's judgment, a transcript of which was on that day filed in the office of the clerk of the circuit court of DeKalb county, became a lien on the undivided half interest of Lindsay in section 8. Lindsay with his family at that time was residing elsewhere. In March, 1876, he first moved with his family upon the section and then first occupied the house which he had previously built thereon, as a home. His right of homestead exemption was then for the first time impressed upon the land, which before that time he owned but had never occupied as a homestead. The right of homestead which he then acquired by such occupancy was subsequent and subject to the prior lien of Paramore's judgment, and could not be by him asserted against it. He had no homestead right exempt from sale under the execution issued upon

that judgment which the sheriff could be required to set off before sale. The lien of the judgment having attached to all his interest in the one undivided half of the section could not be displaced or defeated by the subsequent occupation of it by him, as a homestead. *Elston v. Robinson*, 21 Ia. 531; 23 Ia. 308; Thompson on Homesteads, secs. 241, 246; *Finnegan v. Prindeville*, 83 Mo. 517.

If, however, Lindsay had been entitled to a homestead exempt from sale under execution upon this judgment and the sheriff failed to set it off, the sale would not have been void by reason of such failure. *Crisp v. Crisp*, 86 Mo. 630. The fee would pass to the purchaser subject to his right of homestead (*Black v. Curran*, 14 Wall. 463), which right would not be in any manner affected by the sale, nor could the purchaser at such sale get possession of any part of the premises without setting off that homestead so long as it was occupied by him as such; and doubtless having the right to have the same set off before sale, the failure of the officer to do so would afford the homestead occupant good ground for having the sale set aside at the return term of the execution. This right Lindsay proceeded to assert at the return term of the execution, but afterwards withdrew his claim, abandoned the premises, and there is no question of homestead in the case.

The plaintiff claims that, upon the facts stated, he has a right to be subrogated to the lien which the St. Joseph Building Company had upon the land prior to Paramore's judgment lien, to the extent of the amount of money furnished by him to pay off that lien, with interest. It is not perceived upon what principle this contention can be maintained. The loan of twenty-five hundred dollars, by plaintiff to Lindsay, the execution of the notes by him to the plaintiff, and of the deed of trust to secure them, the payment of the money to the building company, and its acceptance by the company,

may be considered as all parts of one transaction, and it may be conceded that the money paid by the plaintiff through his agent was at the request of Lindsay. Nevertheless, at the time the money was loaned and the payment made, the plaintiff had no right or interest in the property, for the protection of which it became necessary that such payment should be made. By that payment he, for the first time, secured any interest in the land; that the parties had previously been negotiating in regard to the loan, and to the payment of the building company's claim, cuts no figure in the case. The plaintiff thereby acquired no interest in the land and subjected himself to no obligations in respect thereof. He was a stranger to any interest in the land, up to the time he voluntarily made the payment. All the interest he ever acquired in the property he acquired by means of that payment; that was the consideration, and the sole consideration of the notes executed by Lindsay, and the deed of trust to secure their payment.

There is not a scintilla of evidence tending to show that the money paid to the company was for the purchase of their lien, and its release to Lindsay, while in the form of a quit-claim deed, states, in express terms, that it is in satisfaction of the deed of trust, and all the facts negative the idea that it was intended as an assignment. There was no evidence tending to prove any agreement that the lien of the building company was to be kept on foot for the benefit of plaintiff. On the contrary, all the facts negative the idea that such was the intention of any of the parties to the transaction. The facts proven show that the plaintiff is not entitled to the subrogation which he prays for, either as of right or by convention. "The demand of a creditor which is paid with the money of a third person, without any agreement that the security shall be assigned or kept on foot for the benefit of such third person, is absolutely extinguished, but the doctrine of subrogation will be

applied when the person claiming its benefit has been compelled to pay the debt of a third person in order to protect his own rights or to save his own property." Sheldon on Subrogation, sec. 3. The decisions in this state, as elsewhere, will be found in harmony with the principles here laid down. *Wade v. Beldmeier*, 40 Mo. 486 ; *Wolff v. Waller*, 56 Mo. 295 ; *Wooldridge v. Scott*, 69 Mo. 669 ; *Price v. Courtney*, 87 Mo. 387.

The debt due by Lindsay to the building company and the lien given to secure it were absolutely extinguished by the payment. Such was the intention of all parties to the transaction. The plaintiff relied for security for the money he advanced solely upon the deed of trust which he took at the time, and the sole ground upon which a court of equity is asked to intervene in his behalf in this case is the assumption that he would not have parted with his money to make the loan and payments if he had known in January that Paramore's judgment lien had attached to the premises in December. Why didn't he know it? That judgment was spread upon the public records in order that all who might deal with the property might know of its existence. He was not prevented from examining the record or lulled into security by any representation of Paramore, Lindsay, or anybody else. He didn't know simply because neither he nor his agent looked that he might see and know. That plaintiff's security was less valuable than he expected it would be when he made the loan was the result of his own negligence and not of the fault, wrong, or mistake of any other person. Against the consequences of that negligence, for which he has no one to blame but himself, a court of equity cannot relieve him by interfering with the legal rights of others who are without fault. The authorities cited by appellant and many others have been examined in vain to find any recognized equitable principle which would warrant the court in so doing. The relief which courts of equity

are authorized to administer is to be measured by established and well-recognized principles, and not by the "chancellor's foot." This case has been treated as though the only real defendant in the case, Leisenrig, stood in the shoes of Paramore, a position, however, which is far from being sustained by the evidence.

The judgment of the circuit court is affirmed. All concur, except Ray, J., absent.